UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRENDA L. EATON, )
) CASE NO. C10-5651-MJP
Plaintiff, )
)
v. )
) REPORT AND RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner ) RE: SOCIAL SECURITY DISABILITY
of Social Security, ) APPEAL
)
Defendant. )
_____ )

Plaintiff Brenda L. Eaton proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1964.[1] She graduated from high school and has two years of college. She has performed child care services in her home, worked as a bookkeeper, sold party planning goods, operated several home based businesses, and worked in financial planning. (AR 17.)

Plaintiff filed an application for DIB on January 31, 2008, alleging disability beginning December 31, 1993. She is insured for DIB through March 31, 2002. (AR 13.) Plaintiff's application was denied at the initial level and on reconsideration. Plaintiff timely requested a hearing.

On October 2, 2009, ALJ Dan R. Hyatt held a hearing, taking testimony from plaintiff. (AR 21-34.) On October 21, 2009, the ALJ issued a decision finding plaintiff not disabled. (AR 13-20.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on July 13, 2010 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

must be determined whether the claimant is gainfully employed. The ALJ found that the evidence was unclear whether plaintiff had engaged in substantial gainful activity after her alleged onset date and through her date of last insured, but gave the plaintiff the benefit of the doubt and analyzed the claim at the additional steps in the sequential evaluation process. (AR 15.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found medically determinable but not severe the conditions of affective disorder, panic disorder, generalized anxiety disorder, personality disorder, and substance addiction disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for twelve consecutive months and, therefore, did not have an impairment or combination of impairments that met or equaled a listed impairment. Therefore, the ALJ found plaintiff not disabled. (AR 16.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff did not allege any physical impairment in her ability to sit, stand, walk, lift, push, pull, reach, carry, or handle, nor did plaintiff allege any limitation relating to seeing, hearing, or speaking, aside from anxiety related issues. The plaintiff had demonstrated the ability to understand, carry out, and remember simple instructions. (AR 17.) If a claimant demonstrates an inability to perform past relevant work at step four, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at steps two and

three, the ALJ did not proceed to steps four and five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ improperly determined that plaintiff had no severe impairments prior to her date last insured. Plaintiff also contends the ALJ failed to properly consider the opinion of her mental health counselor. She requests remand for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Step Two</u>

At step two of the sequential evaluation process, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"

REPORT AND RECOMMENDATION
PAGE -4

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*. A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show that his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Plaintiff takes issue with the ALJ's conclusion that her medically determinable impairments did not significantly limit her ability to perform basic work activities for twelve consecutive months, arguing that the medical evidence did not "*clearly*" establish that she had no severe impairments persisting for the durational requirements. (Dkt. 18 at 6; emphasis in original.)

The Commissioner asserts that plaintiff failed to establish twelve months of mental health-related limitations that prevented her from performing basic work activities. *See* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. §§ 404.1505, .1509 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least 12 months).

After finding plaintiff's affective disorder, panic disorder, generalized anxiety disorder, personality disorder, and substance addiction disorder to be medically determinable impairments (AR 15), the ALJ assessed the extent to which those conditions affected plaintiff's ability to do basic work activities. First, the ALJ considered plaintiff's testimony about the

intensity, persistence, and limiting effects of her symptoms:

> The [plaintiff] has alleged she is unable to work due to her depression and anxiety. However, she has exhibited behaviors inconsistent with this allegation. She performed child care in her home for several years until 1997 or 1998. She worked as a bookkeeper from 1998 until 2000 or 2001. There is evidence of some work in direct sales of party planning goods from 2000 through 2005, earning $500 per month. After the date last insured, she worked with bakeware and teaching people how to cook between 2002 and 2004 and earned about $500 per month. In 2006, she opened a home based business in Creative Memories, a scrap-booking business and earned $300 to $400 per month. In 2007, the [plaintiff] worked for Morgan Stanley Financial Planners. While the jobs performed after the date last insured do not directly relate to the period under consideration, it does raise questions regarding the [plaintiff]'s credibility. Throughout the period of alleged disability, she demonstrated the ability to perform ongoing work activity.

(AR 17; citations to administrative record omitted.)

The ALJ noted that plaintiff did not allege any physical impairment in her functional abilities, and found that she demonstrated the ability to understand, carry out, and remember simple instructions. The ALJ observed that plaintiff calls in and/or emails her doctor as requested, takes her prescribed medication, and has demonstrated her ability to use her judgment by opening several small businesses, including a day care. The ALJ noted the lack of evidence that plaintiff had difficulty responding appropriately to supervision, co-workers, and usual work situations or changes in a routine work setting. Her ability to travel showed her adaptability to her surroundings. The ALJ found that, as a small business owner, plaintiff would be required to communicate with a variety of different personalities. (*Id.*)

The ALJ also considered the intensity and persistence of plaintiff's symptoms:

> The [plaintiff]'s condition has waxed and waned over the years. Initially, her depression was thought to be post-partum depression and there was anticipation of a full recovery. On July 30, 1994, Dr. McFarland wrote a letter on the

[plaintiff]'s behalf. He indicated the [plaintiff] had made an "excellent recovery" and was well qualified to provide day care for a total of five children. While the plaintiff has had brief periods of increased symptoms, her treatment has been intermittent and conservative. The [plaintiff] had a brief exacerbation of her symptoms in the summer of 1999 relating to anxiety over her son starting first grade. However, by January 2000, the [plaintiff] reported she was feeling much better and did not need to keep her scheduled appointment. Over the years, the [plaintiff]'s medications were monitored. She reported decreased anxiety and improved appetite in December 2002. In January through April 2003, the [plaintiff] reported her depression and anxiety were stable and pretty well under control. Overall, there were no periods of prolonged anxiety or depression which would cause a significant limitation on the [plaintiff]'s ability to perform work related activities.

(AR 17-18; citations to administrative record omitted.)

The ALJ then proceeded to follow the special technique for evaluating mental impairments (20 C.F.R. § 404.1520a):

The first functional area is activities of daily living. In this area, the [plaintiff] has a mild limitation. She does household chores including dishes and laundry. She takes care of personal grooming and her health, as evidenced by her enjoyment of running. She has two children and enjoys doing activities with them and her husband. She can drive and grocery shop.

The next functional area is social functioning. In this area, the [plaintiff] had a mild limitation. She spends time with her husband and children. The records reflect trips to Disneyland and San Francisco. The [plaintiff] also enjoys attending church. In July 2002, the [plaintiff] stated she was going to her friend's house for scrapbooking and later that night for her monthly book club meeting. She is able to go on family vacations, indicating the [plaintiff] is able to be around others.

The third functional area is concentration, persistence or pace. In this area, the [plaintiff] has a mild limitation. The [plaintiff] has run several businesses out of her home demonstrating an ability to concentrate on her business, continue with the business, and keep up with the needs of her customers. In 1999, the [plaintiff] reported she had good concentration. She had been working part-time as a bookkeeper. The [plaintiff] has engaged in various other activities reflecting an ability to concentrate, including reading and doing activities with her children.

One of the [plaintiff]'s work related activities crosses all three of the above

functional areas. For several years, the [plaintiff] ran a day care, caring not only for her own children, but for other children. It required her to take care of preparing meals for children, cleaning up as needed, and caring for the needs of the children. It required the [plaintiff] to engage socially with the children and the parents of the children. Lastly, it required the [plaintiff]'s concentration, persistence, and pace. The [plaintiff] must monitor the children and keep the children on task.

The fourth functional area is episodes of decompensation. In this area, the [plaintiff] had experienced one episode of decompensation which was of extended duration. On January 17, 1994, the [plaintiff] was admitted to the hospital due to depression with suicidal thoughts. She remained in the hospital for two weeks before being discharged in stable condition. However, the [plaintiff]'s condition improved significantly over the following few months and became stable. While there is evidence of more recent incidents, they are outside the period under consideration.

(AR 18-19; citations to administrative record omitted.)

Therefore, the ALJ concluded, because plaintiff's medically determinable impairments caused no more than "mild" limitation in any of the first three functional areas and no episodes of decompensation of extended duration in the fourth area, the impairments were non-severe, and plaintiff was not under a disability as defined in the Social Security Act. (AR 19, 20; citing 20 C.F.R. § 404.1520 (c), 1520a (d)(1).)

Plaintiff agrees that her symptoms have waxed and waned during the relevant time period. (Dkt. 18 at 7.) However, she disputes the ALJ's conclusion that her impairments did not cause more than a minimal effect on her ability to do basic work activities for an extended period. Plaintiff takes issue with the ALJ's reliance on the lack of record evidence showing that she had difficulty responding to supervision, co-workers, or unusual situations, arguing that none of her past work activity involved these types of circumstances.

The Commissioner argues that the ALJ's interpretation was reasonable and should be

given deference. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record…'") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)). The Court agrees with the Commissioner.

The ALJ provided legally sufficient reasons to support the finding that plaintiff did not meet her burden of establishing an impairment or combination of impairments that significantly affected her ability to perform basic work activities for twelve consecutive months. While plaintiff experienced periods of increased symptoms, these were interspersed among periods of improvement and stability. (AR 16.) The ALJ found the periods of increased symptoms to be "brief" and in response to specific situations such as plaintiff's son starting first grade. (AR 17.) The ALJ noted that plaintiff demonstrated the ability to perform ongoing work activity through the period for which she alleged disability. (*Id.*)

Plaintiff does not dispute, and, in fact, agrees with the ALJ's finding that her depression and anxiety waxed and waned over the time in question. Citing Dr. McFarland's records, plaintiff notes that she was "doing well" in May 2000, reporting extreme anxiety and panic attacks "*over the previous few weeks*" in September 2000, and again reporting extreme anxiety to depression "*during the previous few weeks*" in December 2000. (AR 764-68; emphasis supplied.) She does not successfully rebut the ALJ's conclusion that "[o]verall, there were no periods of prolonged anxiety or depression which would cause a significant limitation on the [plaintiff]'s ability to perform work related activities." (AR 18.) The Court concludes that the ALJ's interpretation was rational, supported by substantial evidence, and should be upheld.

/ / /

## Opinion of Anne Olwine, LMHC

Plaintiff received counseling services from Anne Olwine, a licensed mental health counselor, starting in 1993. (AR 423-614.) Ms. Olwine's opinions are set forth in the record in a letter dated March 8, 2008 (AR 280), a questionnaire completed on September 30, 2009 (AR 836-40), and a letter dated October 5, 2009 (AR 841). Plaintiff argues that the ALJ overlooked the October 5, 2009 letter in evaluating Ms. Olwine's opinions, and further contends that the ALJ should have given more consideration to Ms. Olwine's opinion as to plaintiff's ability to function.

In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p. Less weight may be assigned to the opinions of other sources than acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" as well as "non-medical sources" such as teachers, school counsellors, and social welfare agency personnel, who have seen the claimant in their professional capacity. SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the

outcome of the case." *Id*.

Ms. Olwine, a licensed mental health counselor, is not regarded as "an acceptable medical source" under Social Security regulations. 20 C.F.R. § 404.1513. Therefore, her opinions are analyzed as lay testimony. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.")) *Accord Turner*, 613 F.3d at 1223-24.

Considering Ms. Olwine's opinions, the ALJ found as follows:

> Ms. Olwine wrote a letter dated March 8, 2008 regarding the [plaintiff]'s condition. At the time of the letter, the [plaintiff] had recently been hospitalized for suicidal ideation. Ms. Olwine opined the [plaintiff] should not work due to the pressure of employment. This opinion has been given no weight as it relates to the [plaintiff]'s status in 2008, not the period under consideration. Ms. Olwine's letter indicates the [plaintiff] had only two periods of regular treatment. Aside from those periods, the [plaintiff] would call as needed, when her symptoms increased. Ms. Olwine provided no limitations or opinion regarding work related functioning for the period under consideration.
>
> On September 30, 2009, Ms. Olwine opined the [plaintiff] had marked limitations in social functioning and concentration, persistence, or pace with moderate limitations in activities of daily living. She opined these limitations have been in place since at least March 2002. However, the evidence does not support finding the [plaintiff]'s activities are as severe as opined. Specifically, the [plaintiff] was noted to travel on vacations with her family; she has been

raising her children; and she attended church on a regular basis. These are not activities of a person with moderate to marked limitations. Ms. Olwine opined the [plaintiff] had marked limitations in her ability to perform activities within a schedule, maintain attendance, and be punctual within customary tolerances. However, there is no reference during the period under consideration of the [plaintiff]'s failure to attend appointments or arriving late for appointments. Ms. Olwine provided no objective evidence in support of her opinion. Rather, it appears she was basing her assessment, in part, on the fact the [plaintiff] had worked only part-time in the past.

(AR 19; citations to administrative record omitted.)

Although plaintiff assigns error to the ALJ's failure to reference Ms. Olwine's October 2009 letter, she does not point to any specific opinion articulated by Ms. Olwine in that letter that had not also been expressed in Ms. Olwine's previous communications, other than to state that the October 2009 letter "described more fully the basis for Ms. Olwine's assessment." (Dkt. 18 at 10.) Although Ms. Olwine opines that plaintiff "is unable to perform the type of tasks required to be successful in obtaining and employment and would be unable to maintain employment of any kind[,]" (AR 841), the question of a claimant's employability is reserved to the Commissioner. Therefore, the source of an opinion on this issue is not given any special significance. 20 C.F.R. § 404.1527(e)(1) and (3).

To qualify as germane, a reason for disregarding the testimony of a lay witness must be more than a wholesale dismissal of all such witnesses as a group, but rather must be specific to the individual witness. *Smolen,* 80 F.3d at 1288 (finding not germane the reason given by the ALJ for dismissing the lay witness testimony because it came from "'family witnesses' who were therefore 'undoubtedly advocates, and biased'", since this "amounted to a wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified.") Here, the ALJ did not propound a

wholesale dismissal of the opinions of individuals such as Ms. Olwine as a group, but rather provided reasons specific to her, that is, germane reasons. The ALJ noted that the opinions expressed in Ms. Olwine's March 8, 2008 letter did not pertain to the time period at issue, before plaintiff's date last insured of March 2002. The ALJ contrasted Ms. Olwine's opinions with the evidence of plaintiff's daily activities which the ALJ found to exceed those of a person with moderate to marked limitations. The ALJ noted the lack of evidence that plaintiff failed to attend or arrived late for appointments, as well as the lack of objective evidence proffered by Ms. Olwine for her opinions. The ALJ also concluded that Ms. Olwine seemed to base her assessment, in part, on the fact that plaintiff had only worked part-time in the past.

Although plaintiff argues that the ALJ should have given more weight to Ms. Olwine's opinion than was accorded it, the reasons articulated by the ALJ were legally sufficient. The Court does not find error in the ALJ's assessment of Ms. Olwine's opinions.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 19th day of August, 2011.

Mary Alice Theiler
United States Magistrate Judge